## THOMAS & CO. *v.* UNITED STATES (No. 635).[1]

PAPER SUITABLE FOR PAPER HANGINGS.

The evidence does not show that the paper of the importation is either commercially or commonly known as printing paper, distinguishable as such from wall paper; it was not brought in to be used in printing books, and the testimony is conflicting as to whether it is suitable for such a purpose. The case is ruled by Pritchard *v.* United States (T. D. 31974), and the merchandise was properly held not to be printing paper.

United States Court of Customs Appeals, January 11, 1912.

APPEAL from Board of United States General Appraisers, Abstract 24804 (T. D. 31300).

[Affirmed.]

*Brooks & Brooks (Frederick W. Brooks, jr.,* of counsel) for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Martin T. Baldwin* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise imported consisted of white paper in reels or rolls. 19½ to 22 inches wide, imported for use as material for paper

---

[1] Reported in T. D. 32165 (22 Treas. Dec., 57).

hanging. Duty was assessed thereon under paragraph 415 of the tariff act of 1909 for paper hangings. The importers' protest claimed the paper to be dutiable as printing paper suitable for printing books.

It is conceded by the Government that the paper when imported was not a completed paper hanging, but merely material for making a paper hanging, and it is now claimed that the paper is dutiable as paper not specifically provided for. The burden is of course upon the contestant to show that the paper is brought within the paragraph named in the protest. This paragraph, so far as material, reads as follows:

> Printing paper unsized, sized, or glued, suitable for the printing of books and newspapers, but not for covers or bindings, not specially provided for in this section, * * * valued above five cents per pound, fifteen per centum ad valorem.

The evidence as to whether this paper was suitable for printing books was conflicting. There was evidence given by printers that they had not seen paper of these dimensions used for that purpose, but on the other hand there was testimony of other witnesses showing that it could be so used. This apparent conflict is accounted for by the appellants' counsel by the statement that the witnesses who testified for the Government were mainly witnesses who used flat presses and printed only from a sheet, whereas it is said that modern printers print from the roller.

The board was of the opinion that the importer had failed to make a case. It was found as a fact, and the evidence supports this statement, that the merchandise in question was not imported for the purpose of printing books or newspapers. It is not claimed by counsel for the Government that this is a conclusive fact to disprove that the paper is printing paper. But it is said, and said truly, that in the absence of any other proof as to whether this is or is not printing paper, it is a fact entitled to some consideration.

There was testimony given by a witness for the importer that this paper is suitable for making wall paper. The fact that it comes in rolls instead of sheets would appear to make it peculiarly adapted for such a purpose. It is also true that wall paper must have a good printing surface. It is said in the brief of counsel that the use of this paper is a rare and exceptional use, but we find in the evidence no basis for this statement.

A careful examination of the testimony fails to disclose that this paper is either commercially or commonly known as printing paper as distinguished from wall paper. This failure of proof is fatal to the appellant's contention under our decision in Pritchard v. United States (2 Ct. Cust. Appls., 247; T. D. 31974). In dealing with a provision of the act of 1897 we held, affirming the decision of the Board of General Appraisers, that Congress intended by the term "printing paper," as used in the paragraph, that the paragraph should apply

only to such paper as was recognized as printing paper. It was said by the court, speaking through Barber, Judge:

The words themselves signify some particular kind of paper and in addition it must be suitable for books.

The question of whether it is printing paper or not may well be determined by the understanding of the trade in relation to paper, but whether or not it is suitable for books still remains a question of fact probably not dependent upon any trade understanding.

That case must be held to rule the present, and it follows that the decision of the Board of General Appraisers should be *affirmed*.